**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X

**DAREN MAAS**                                                    Index No. 23-cv-04147 (VSB)

                                     **Plaintiff,**

                                                                 **ORAL ARGUMENT**
                    -against-                                    **REQUESTED**

**VERIZON NEW YORK, INC.,**

                                     **Defendant.**

-----------------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**


LAINE ARMSTRONG, ESQ.
ADVOCATES FOR JUSTICE, CHARTERED ATTORNEYS
225 Broadway, Suite 1902
New York, NY 10007
Tel:     (212)285-1400
laine@advocatesny.com
Attorneys for Plaintiff

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................ii

PRELIMINARY STATEMENT....................................................................................... 1

ARGUMENT ................................................................................................................... 1

    I.    PLAINTIFF MEETS HIS BURDEN AS TO HIS ADA CLAIMS.................................... 2

        A.    Plaintiff Was Disabled Under the Definition of the ADA............................................... 2

        B.    Plaintiff Was Retaliated Against by Verizon .................................................................. 5

        C.    Defendant Did Not Make Legally Sufficient Efforts to Reasonably
            Accommodate the Plaintiff ....................................................................................... 10

    II.    PLAINTIFF MEETS HIS BURDEN UNDER THE NYSHRL .................................... 17

        A.    Plaintiff Was Disabled Under the Definition of the NYSHRL .................................... 17

        B.    Plaintiff Makes a Prima Facie Claim of Retaliation ....................................................... 18

        C.    Plaintiff's Claims are not Preempted ............................................................................ 19

CONCLUSION................................................................................................................ 20

LOCAL CIVIL RULE 7.1(c) WORD COUNT CERTIFICATION............................................ 21

## TABLE OF AUTHORITIES

### Cases

*Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 508 N.Y.S.2d 923, 501 N.E.2d 572 (1986)................. 4

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)............ 2

*Beard v. Banks*, 548 U.S. 521, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006) .................................... 2

*Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d. Cir. 2008) ....................................................... 14

*Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) ....................................................................... 19

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)........................ 2

*Connecticut Ironworkers Employers Ass'n, Inc. v. New England Reg'l Council of Carpenters*, 869 F.3d 92 (2d Cir. 2017) ................................................................................... 2

*Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551 (S.D.N.Y. 2023) ........................... 16

*Doe v. Bd. of Educ. of Fallsburgh Cent. Sch. Dist.*, 63 F. App'x 46 (2d Cir. 2003) ....................... 8

*Dominic v. Consolidated Edison Co.*, 822 F.2d 1249 (2d. Cir. 1987)............................................... 6

*Eisner v. Cardozo*, 684 F. App'x 29 (2d Cir. 2017)......................................................................... 9

*Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111 (2d Cir. 2000)......................................................... 18

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010) ................................................. 19

*Graves v. Finch Pruyn & Co.*, 457 F.3d 181 (2d Cir. 2006) ......................................................... 17

*Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415 (2d Cir. 2016)................................................... 8

*Jacobsen v. New York City Health & Hosps.* Corp., 22 N.Y.3d 824, 11 N.E.3d 159 (2014) .......... 4

*Jones v. City of NY*, 2020 U.S. Dist LEXIS 3745 (S.D.N.Y. Jan. 8, 2020).................................. 14

*Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405 (S.D.N.Y. 2018) ........................... 17

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988)..................................................... 19

*Livadas v. Bradshaw*, 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994)............................. 19

*Makinen v. City of NY*, 53 F Supp 3d 676 (S.D.N.Y. 2014)........................................................... 5

*Martinez v. Staten Island Univ. Hosp.*, 814 F. Supp. 3d 380 (E.D.N.Y. 2026) ............................ 14

*McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92 (2d Cir. 2009) ..................................... 14

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1972).................................................................. 6

*McElwee v. County of Orange*, 700 F.3d 635 (2d. Cir. 2012)........................................................... 14

*McMillan v. City of New York*, 711 F.3d 120 (2d. Cir. 2013) .......................................................... 16

*McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211 (2d Cir. 2006) ................................................... 9

*Mesnick v. Gen. Elec. Co.*, 950 F2d 816 (1st Cir 1991)...................................................................... 6

*Natofsky v. City of New York*, 921 F.3d 337 (2d. Cir. 2019) .......................................................... 18

*Nelson v. City of New York*, 2013 WL 4437224 (S.D.N.Y. 2013)..................................................... 5

*Pediford-Aziz v. City of New York*, 170 F. Supp. 3d 480 (E.D.N.Y. 2016)...................................... 8

*PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2d Cir. 2002)........................................................... 2

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000) ............................................... 8

*Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503 (S.D.N.Y. 2012) ........................... 4

*Rowlett v. Anheuser-Busch, Inc.*, 832 F.2d 194 (1st Cir. 1987)........................................................ 6

*Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317 (N.D.N.Y. 2010) ............................................ 2

*Staron v. McDonald's Corp.*, 51 F.3d 353 (2d Cir. 1995) ................................................................ 17

*Stone v. City of Mount Vernon*, 118 F.3d 92 (2d Cir. 1997) ........................................................... 17

*Sumner v. United States Postal Serv.*, 899 F.2d 203 (2d Cir. 1990).............................................. 6, 7

*Tafolla v. Heilig*, 80 F.4th 111 (2d Cir. 2023).................................................................... 15, 17, 18

*Toussaint v. NY Dialysis Services, Inc.*, 706 F. App'x 44 (2d. Cir. 2017)....................................... 9

*Vives v. NY City Dept. of Corr.*, 2019 U.S. Dist LEXIS 51913 (E.D.N.Y. Mar. 27, 2019) ............. 8

*Wagner v. County of Nassau*, 2014 U.S. Dist. LEXIS 94685 (E.D.N.Y. July 11, 2014) ........... 2, 4

*Warmsley v. N.Y. City Transit Auth.*, 308 F. Supp. 2d 114 (E.D.N.Y. 2004) .................................. 4

*Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201 (2d Cir. 2019) ................ 19

*Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834 (2d Cir. 2013) ....................................................... 8

iii

**Statutes**

29 C.F.R. Pt. 1630 .................................................................................................................. 15, 17

29 U.S.C § 185 ............................................................................................................................ 20

42 U.S.C. § 12102 et seq. ............................................................................................................ 5

Fed. R. Civ. P. 56(a) .................................................................................................................... 1

Fed. R. Civ. P. 56(c)(1) ............................................................................................................... 2

**PRELIMINARY STATEMENT**

The Plaintiff, Daren Maas is a former employee of the Defendant that was discriminated against based on his disability and requests for reasonable accommodations. Plaintiff worked for Defendant Verizon New York Inc. ("Verizon") for over 23 years in a physically demanding position as a lineman. Plaintiff's physical work responsibilities took a toll on his body. He suffered a work-related injury to his left arm in the spring of 2019 but was denied a reasonable accommodation when he sought to return to work that fall. As a result of Defendant Verizon's refusal to provide an accommodation, Plaintiff's return to work was delayed for over two months. Very shortly after Plaintiff was forced to return to work without a proper accommodation to protect him. Plaintiff suffered another serious injury and was forced to take another medical leave. Again, upon his return to work, Plaintiff requested and Defendant Verizon denied it without any interactive dialogue. Then, immediately after Plaintiff notified his supervisor that he would need additional surgery and need to avoid heavy lifting, he was fired in retaliation for an incident that under normal circumstances would have been resolved without subjecting him to any discipline.

There is a genuine issue of fact as to whether Plaintiff requested an accommodation in November of 2019 after he returned to work. There are triable issues of fact related to the essential functions of Plaintiff's job, efforts made to accommodate him and whether his termination was pretextual.

**ARGUMENT**

*Legal Standard*

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed.

1

2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

"The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party." *Connecticut Ironworkers Employers Ass'n, Inc. v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98-99 (2d Cir. 2017); see also Fed. R. Civ. P. 56(c)(1). If the nonmoving party has the ultimate burden of proof on specific issues at trial, the movant may also satisfy its own summary-judgment burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S. at 322-23; *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529, 126 S. Ct. 2572, 165 L. Ed. 2d 697 (2006); *PepsiCo*, 315 F.3d at 105.

**I.      <u>PLAINTIFF MEETS HIS BURDEN AS TO HIS ADA CLAIMS</u>**

      A.      <u>Plaintiff Was Disabled Under the Definition of the ADA</u>

The Plaintiff's injuries in this case qualify as a disability under the ADA based on fact and the Defendant's perception. It is undisputed that he was granted paid disability leave and workers compensation. "Whether an individual is 'regarded as' having a disability depends not on the existence of an actual disability but on the employer's perception of the employee and is a question of intent." *Wagner v. County of Nassau*, 2014 U.S. Dist. LEXIS 94685, at *13 [E.D.N.Y. July 11, 2014, No. 11-CV-1613(JS)(ARL)]) quoting, *Skinner v. City of Amsterdam*, 824 F. Supp. 2d 317, 327-28 (N.D.N.Y. 2010) (internal quotation marks and citations omitted). When Plaintiff was

2

injured in the April of 2019 he was out of work until September of 2019. During one of the periods he was out of work from April 3, 2019 through August 1, 2019 the Defendant's vendor, Sedgwick documents the beginning of this time period in a August 1, 2019 email to his supervisor, Craig Majid as "Date **Disability** Commenced: 04/04/2019". (emphasis added) (See, ECF Doc. No. 63-27) Defendant certainly considered Plaintiff disabled from April 2019 to August 2019.

After failing to accommodate him with a light duty position from August 2019 to September 2019, Plaintiff returned with no documented restrictions but communicated to Majid that he was still going through physical therapy, that he was going to need surgery on his right shoulder and that he could not do the heavy lifting. (See, ECF Doc. No. 63-1, Maas Tr. 104:08-22, 105:7-20). When Majid was asked during his deposition whether Maas told him he would have any limitations he replied that he did not "recall". (ECF Doc. No. 63-4, Majid Tr. 84:15-21). This lack of recollection was echoed by Majid's superior, Eugene Cimaglia who when asked whether restrictions were discussed with Maas he replied "I don't know if Craig did or did not" and when asked whether he was aware of any other requests for accommodation made by Maas he stated [n]ot that I can recall." (See, ECF 63-6, 99:6-25) There is certainly a genuine issue of fact here and disagreement regarding whether or not the Plaintiff informed his supervisors of his restrictions and limitations even though he did not make a formal request for an accommodation in the same way he done September 2019.

Given Verizon's repeated refusals to reasonably respond to Maas' requests for accommodation for a flagging, groundsman position or other light duty, it is clear that it wanted this employee to be disability free before allowing him to return. In fact, Plaintiff on more that one occasion during his deposition testified that when he told Majid about his need to continue with physical therapy that he replied "[w]ork it out with your fellow team." (See, ECF Doc. No. 63-1,

3

Maas Tr. 104:21-22, 105:18-20) Verizon's pattern of not providing reasonable accommodations except for leave without showing business necessity makes it clear that it regarded Plaintiff as disabled in violation of the ADA. See *Warmsley v. N.Y. City Transit Auth.*, 308 F. Supp. 2d 114, 121 (E.D.N.Y. 2004) ("[T]he [defendant], by implementing its 'disability has terminated' policy, required individuals returning from medical leave to be disability-free. Thus, [defendant] regarded every former employee who had taken a medical leave as 'substantially limited' in his ability to work in a broad range of jobs.") *Wagner v. County of Nassau*, 2014 U.S. Dist LEXIS 94685, at *17 [EDNY July 11, 2014, No. 11-CV-1613(JS)(ARL)]) see also *Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 511 & n.3 (S.D.N.Y. 2012) (noting that a "100% healed" policy prevents individual assessment and therefore violates the ADA).

The Defendant attempts to claim there is an absence of an issue of fact with respect to the request for an accommodation in November of 2019 and only offers a lack of recollection as evidence. "[T]he proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" *Jacobsen v. New York City Health & Hosps.* Corp., 22 N.Y.3d 824, 833, 11 N.E.3d 159, 165 (2014) (quoting, *Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 324, 508 N.Y.S.2d 923, 501 N.E.2d 572 [1986] ). Majid and Cimaglia's inability to recall whether they were told about Maas's limitations is simply not sufficient to support the averment that no accommodation was sought by the Plaintiff or that no restrictions were communicated to the employer.

Defendant's decision not to accommodate the Plaintiff after being informed that he was going to be attending physical therapy and could not engage in any heavy lifting was an adverse action. A trier fact could reasonably conclude that Majid as a member of management perceived

4

Maas to be disabled at the time of his return to employment when he told him to "work it out with [his] team". (ECF Doc. No. 63-4, Maas Tr. 105:18-20) "The ADA proscribes discrimination based on perceived disability via its definition of "disability" as including "being regarded as having" a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(C) (emphasis added). An individual is eligible for coverage under the "regarded as" prong if he or she "establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A) (emphasis added). Accordingly, where "regarded as" liability is asserted, the court must determine whether a plaintiff was "disabled" by determining whether they were subjected to an adverse employment action based on a perceived disability. *Makinen v. City of NY*, 53 F Supp 3d 676, 691 [S.D.N.Y. 2014]) See *Nelson v. City of New York*, 2013 WL 4437224 at \*7-\*8 (S.D.N.Y. 2013); see also 29 C.F.R. pt. 1630, app. § 1630.2(l) ("[E]vidence that a covered entity took a prohibited action because of an [actual or perceived] impairment will establish coverage and will be relevant in establishing liability, although liability may ultimately turn on whether the covered entity can establish a defense.").

B.      Plaintiff Was Retaliated Against by Verizon

Plaintiff was retaliated against based on his disability. Defendant retaliated against him when they refused to assign him to light duty in August of 2019 and did not communicate with him directly or otherwise articulate the efforts that were made to identify such an assignment. Majid's efforts to identify an accommodation appear perfunctory given the fact that he only acted on the third email from the disability vendor, Sedgwick. He forwarded the request to his superior, Eugene Cimaglia on July 26, 2019 at 8:21am. Then Cimaglia sent out the request an hour later, receiving an email the next morning with no explanation, just "[s]orry no" jobs available. (See,

5

ECF Doc.No. 63-28, 63-29 and 63-30) Defendant further retaliated when Plaintiff communicated that he would not be able to do any heavy lifting and was ignored and told to work it out with his team members. Plaintiff was ultimately retaliated against when despite a flawless disciplinary record, he was terminated for engaging in horseplay with a fellow employee. "There are many sources of circumstantial evidence that, theoretically, can demonstrate retaliation in a way sufficient to leap the summary judgment or directed verdict hurdles. These include, but are not limited to, evidence of differential treatment in the workplace, *see, e.g., Sumner v. United States Postal Serv.*, 899 F.2d 203, 210 (2d Cir. 1990); *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1254-55 (2d. Cir. 1987), statistical evidence showing disparate treatment, *see, e.g., McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1972), temporal proximity of an employee's protected activity to an employer's adverse action, *see, e.g., Rowlett v. Anheuser-Busch, Inc.*, 832 F.2d 194, 202 (1st Cir. 1987); *Sumner*, 899 F.2d at 209, and comments by the employer which intimate a retaliatory mindset." *Mesnick v. Gen. Elec. Co.*, 950 F2d 816, 828 [1st Cir 1991])

*Plaintiff's termination was pretextual*

Plaintiff testified that Brian Hulsen pulled the chair from under him first and that in the spirit of horse play he pushed him, not expecting him to fall backwards the way he did. It implausible that an employee with a long tenure and clean record would suddenly attack a fellow employee in front of others including two members of management. There is a triable issue of fact as to whether the Plaintiff and Hulsen were engaging in horseplay at the time of the incident and whether given the circumstances, the penalty of termination was excessive and thus pretextual. A neutral review of the Defendant's investigative findings speaks to provocation of the Plaintiff immediately before the incident that is being characterized as workplace violence. According to

6

the findings, "Franzese stated he was seated next to [] Hulsen when [] Maas walked up and asked if anyone was on the computer. [] Franzese stated he moved aside and joked to [] Maas telling him to sit on [] Hulsen's lap." (ECF Doc. No. 63-33 Pg. 13, ¶4) This view is partially supported by a member of management, when it reports that "[] Majid stated [] Hulsen told [] Maas he was just joking with him …." (*Id.* at ¶2)

"Where the employer provokes a reaction from an employee, that reaction should not justify a decision to impose a disproportionately severe sanction." *Sumner v. United States Postal Serv.*, 899 F2d 203, 210 [2d Cir 1990]) [*See Jalil v. Avdel Corp.*, 873 F.2d 701, 709 (3rd Cir. 1989)]. In the case at bar, the Plaintiff is claiming that Hulsen "pulled the chair out from underneath [him] and [Hulsen] was laughing. [He] thought [Hulsen] was joking around. So when [he] saw him leaning back on his chair, [he] gave him a little push. And when he lost his balance, that's when he fell back on the floor." (ECF Doc. No. 63-1, Maas Tr. 148:11-15) To be clear, during his deposition the Plaintiff made clear that he disagreed with many of the versions put forth by so-called witnesses to the incident involving Hulsen and himself. When asked about Majid's claim, that he saw Plaintiff grab and throw Hulsen to the ground he stated that he disagreed with that. (*Id.* at 134:12-20) He was asked "[d]o you disagree with what Craig said here he saw?" (Id. at 134:16-17) And responded, "[y]es." (*Id.* at 134:18) Then, Plaintiff was asked, "[h]ow do you disagree with that?" (*Id.* at 134:19) Plaintiff responds, "[n]one of it is true." (*Id.* at 134:20)

With respect to the other management witness, Eugene Cimaglia, Plaintiff also denies his stated version, that he saw him grab Hulsen and slam him to the ground. When asked, "…what if anything, do you disagree with from that statement?" (*Id.* at 140:23-24) He responded, "I disagree with the whole statement." (*Id.* at 140:25) Plaintiff further denies yelling to Hulsen that he "shouldn't mess with him." (*Id.* at 141:14-18) Even, Hulsen denies telling Defendant's

7

investigators that after he was on the ground Plaintiff said, "[d]on't you mess me". (See, ECF Doc. No. 63-3, Hulsen Tr. 17:6-12) After the incident occurred and Plaintiff realized that the incident was being blown out of proportion, he sent Hulsen a text message asking him, "[y]ou ok?" To which Hulsen responded, "[y]es I'm fine. I told [them] I don't want to see you get in trouble." (Declaration of Edward Pichardo, Pl. Ex. 1, P0001). Despite, Hulsen's later deposition testimony and statements to investigators, this text message raises a material issue fact as to what occurred that morning and whether it can fairly be characterized as workplace violence. Based on the Plaintiff's denials, along with inconsistencies as well as contradictions regarding how this incident occurred, certainly raise genuine issues of fact sufficient to allow a trier of fact to conclude that the termination in this case was pretextual.

"A plaintiff may show pretext 'by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, [nondiscriminatory] reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.'" *Vives v. NY City Dept. of Corr.*, 2019 U.S. Dist LEXIS 51913, at *37-38 [EDNY Mar. 27, 2019, No. 15-CV-06127 (MKB)]) quoting, *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 430 (2d Cir. 2016) (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is . . . one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."); *Doe v. Bd. of Educ. of Fallsburgh Cent. Sch. Dist.*, 63 F. App'x 46, 49-50 (2d Cir. 2003) ("Evidence that could permit a jury to believe that the defendant's [*38] proffered reasons are not believable can support an inference that they are pretexts for discrimination."); *Pediford-Aziz v. City of New York*, 170 F. Supp. 3d 480, 486 (E.D.N.Y. 2016)

8

("From . . . implausibilities, inconsistencies, and contradictions in the proffered reasons . . . one could conclude that . . . explanations [are] pretext." (alterations, citation, and internal quotation marks omitted)).

Plaintiff is not asking the Court to make a credibility determination, but to instead find that there are genuine issues of fact with respect to this event that is being used by the Defendant to justify his firing. "When making this assessment, courts "are decidedly not interested in the truth of the allegations against [the] plaintiff" but rather "are interested in what motivated the employer." *Id.* at *38, quoting *Toussaint v. NY Dialysis Services, Inc.*, 706 F. App'x 44, 45-46 (2d. Cir. 2017) (quoting *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006)); *see also Eisner v. Cardozo*, 684 F. App'x 29, 31 (2d Cir. 2017) (noting that the pretext inquiry is "decidedly not interested in the truth of the allegations against [a plaintiff, but only] in what motivated the employer" (quoting *McPherson*, 457 F.3d at 216)) Plaintiff testified that his union representative, Mike Ippoliti spoke to Cimaglia about an accommodation for him and that Cimaglia stated [h]e got hurt at work too much." (See, ECF Doc. No. 63-1, Maas Tr. 124:22-125:1) This testimony is corroborated by the handwritten grievance appeal letter Plaintiff wrote to his union stating that "… a comment was made from [Eugene Cimaglia] to [Mike Ippoliti] that I am out alot on workers comp[ensation]." (See, ECF Doc. No. 63-33, Pg. 38-39, VERIZON 000565-000566)

The Defendant attempts to characterize the union's refusal to take Plaintiff's case to arbitration as their agreement that he was not terminated because of his absences due to injury by referencing a letter dated October 19, 2020 denying his appeal of their decision. (See, *Id.* at pg. 43, VERIZON 000570-000571) However, a neutral review of this correspondence makes clear that this statement is made only in relation to the letter of termination that was provided by the Defendant. Nowhere in that denial of Plaintiff's appeal does it state that Mike Ippoliti was not told

9

or denies being told that Plaintiff was getting hurt or absent "too much." It is evident that in their decision, that the union was focused on whether they would be able to overcome their burden of proof, not that they agreed with management, on their reason for discipline and penalty. Unions often have to decide whether to utilize their precious resources to take a case to arbitration. The union's choice not to take this case to arbitration is not determinative as to whether the Defendant discriminated against the Plaintiff based on his disability and associated absences. It is clear from the evidence, that the union simply chose not to get involved in this dispute between one of its members and the company. To be clear, Plaintiff does not agree with the union's passivity in this matter, as evidenced by Plaintiff's documented displeasure. (See, *Id.* at pg. 37-42, 45-46, VERIZON 000564-000569, 000572-000573)

      C.      <u>Defendant Did Not Make Legally Sufficient Efforts to Reasonably Accommodate the Plaintiff</u>

*No showing that an interactive engagement took place*

When the Plaintiff attempted to return to work in September of 2019, he requested an accommodation based on his documented restriction. It is undisputed that no member of the Defendant's staff met with him to discuss his restrictions and limitations to come up with a reasonable solution. As alleged in the complaint, they summarily denied his request, claiming that no light duty work was available. See, Complaint ¶12. Majid was asked whether he was aware of Plaintiff requesting an accommodation and he stated, "I remember an email was given to me about an accommodation. Where it went after that, I'm not sure." (See, ECF Doc. No. 63-4, Majid Tr. 64:1-4). Majid is subsequently asked, "[d]id you ever speak to Daren about an accommodation?" And he responds, "[n]o. I don't speak to him. Everything goes through the insurance, through Sedgwick. They have a case manager that we talk to." (See, *Id.* at 64:9-13) Later on during the deposition he was again asked, "[d]id you ever discuss these requests for accommodation with

[]Maas?" He again responded, "I don't – when they're out on disability, I don't talk to the person. I go through – everything is through Sedgwick." (See, *Id.* at 75:7-13) It is clear from Majid's deposition testimony, that even though he was Plaintiff's direct supervisor and had knowledge of his request for an accommodation, he did not meet with him or discuss his restrictions and limitations.

The Defendant designated Samantha Miller as the witness most qualified to discuss their policies and procedures related to reasonable accommodations requests. (ECF Doc. 63-10, See, Miller Tr. 8:23-9:9) Miller was a Manager and/or Director of the Absence Team during the relevant time period which included the Workplace Accommodations Team (WPAT). (See, *Id.* at 11:10-14:17) During her deposition, Miller basically testified that an employee may request an accommodation by way of a form that is provided or if they are out on disability through a notification from the disability vendor. (See, *Id.* at 16:18-17:8) She testified that when it comes through the disability vendor that notification of a request for an accommodation in order to return to work "usually" would be sent to what they refer to as a "people leader" who is a person who has employees that directly report to them. (See, *Id.* at 17:13-17) When asked whether there was "a specific procedure in place if the people leader determined that there was work that the employee could do with the restrictions?", Miller responded, "I mean, no, … [i]f the people leader did have work to do they would respond and let the vendor know that. But the actual procedure, depending on what the accommodation was, you know, I can't say." (*Id.* at 18:16-19:2)

With respect to the disability vendor's procedure for dealing with these accommodation requests, Miller testified that "if they received a response from a people leader that there was no work with a particular restriction, the vendor would go and … review the disability claim to see if they could continue to approve the disability. (See, *Id.* at 19:22-20:4) This indicates that the

11

Defendant inclination is to place an employee on leave whenever an accommodation request is made. When Miller was asked whether as a practice Verizon had any direct communication with the employee as part of this process?, her response was "… they're case by case, so it's – answering that in the abstract is tough. Generally no…." (See, *Id.* at 20:5-11) She mentioned that the employee could request so called "alternate" accommodations through the regular process and that the disability vendor would "usually" share this type of submission procedure with the employee but that it would be "tough to know". (See, *Id.* at 20:24-21:13) Miller was again asked, "[d]id Verizon engage with the employee with respect to a request for an accommodation if the employee did not reach out?" Her response was, "[a]gain, that would have been case by case. For the most part, no, because if the interaction between that people leader and the disability vendor resulted in additional disability time out … then that would be a scenario where we probably would not have engaged…." (*Id.* at 22:25-23:17)

Miller was asked what the people leader's responsibilities were with respect to exploring different job accommodations that were available to the employee. She responded that "the people leader was responsible for exploring whether there were tasks the employee could do within the restrictions that the vendor was sharing with them. So for example, employee cannot climb a pole. It was the people leader's responsibility to consider whether there was any work that they could have the employee do that wouldn't include that…." (See, *Id.* at 31:23-32:24) With respect to outreach by the people leader, she mentioned the existence of certain "programs" that would fit certain kinds of physical restrictions and reaching out to those units as well as "groups" that perform "sedentary work" that have a certain number of seats or slots that can be filled depending on opening or opportunity. (See, *Id.* at 33:2-35:10) However, Miller made clear that her team was

12

only copied on such efforts when the request came through the vendor in this case, Sedgwick if the people leader determined there was no work that met the restrictions. (See, *Id.* at 35:11-23)

In this case, Majid was the Plaintiff's people leader responsible for reaching out to see if there were any reasonable accommodations for his restrictions. When Miller was asked whether her office took any steps to verify or determine what job accommodations were considered by Majid, her reply was no, that they would have relied on him. (See, *Id.* at 53:23-54:9) She also verified upon review of the relevant file that Majid never reached out to her office for help with the accommodation request. (See, *Id.* at 59:25-60:10) When asked whether there was a process by which employees can directly request accommodations directly from their managers or supervisors, her response was "no", if they go to their manager without involving Sedgwick, the manager would refer them to her office. She then explained that the managers are trained to give the employees forms for such requests. (See, *Id.* at 62:5-63:9)

Ultimately, when Miller was informed of Plaintiff's claim, that he notified his manager in November 2019 that he needed additional surgery and treatment for an on the job injury, she said, "I think its's a conversation that need[ed] to had with the employee and their manager to understand a little better what the, you know, what the employee is saying they need…." (See, *Id.* at 93:7-23) As to the existence of a written policy or procedure that instructs employees if they disagree with a reasonable accommodation determination, she responded there was no procedure or policy and that it depended on the decision-maker, the person that employee reports to. (See, *Id.* at 113-13-22)

It is clear from Miller's testimony that Majid and his superior Cimaglia were expected to have an interactive dialogue with the Plaintiff regarding his restrictions and limitations. They did not do that. Instead, they delegated those duties to others and did not, in any way meaningful, seek

13

to address his request for an accommodation. The deposition testimony of Miller, Majid and Cimaglia along with a review of the email correspondence between Majid and Sedgwick make clear that there is a genuine issue of fact as to whether a legally mandated interactive dialogue took place in this case. "In the context of the ADA, reasonable accommodation may include, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" *Jones v. City of NY*, 2020 U.S. Dist LEXIS 3745, at *14-15 [S.D.N.Y. Jan. 8, 2020]), quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009).

Majid had a duty to be proactive under the circumstances of this case and the evidence indicates that he was not. "[T]he Second Circuit has held that, "under certain circumstances, an employer is required to act proactively and engage in an interactive process to accommodate the disability of an employee even if the employee does not request accommodation." *Martinez v. Staten Island Univ. Hosp.*, 814 F. Supp. 3d 380, 408 (E.D.N.Y. 2026), quoting, *McElwee v. County of Orange*, 700 F.3d 635, 642 (2d. Cir. 2012) (citing *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d. Cir. 2008)) ("The Second Circuit has held 'that an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious — which is to say, if the employer knew or reasonably should have known that the employee was disabled.'" *Brady*, 531 F.3d at 135) The Plaintiff's injuries in this case were obvious and known to management. It is undisputed that no one bothered to meet or speak with him to discuss his restrictions, limitations and options. The Second Circuit has "explained that 'the ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated. Thus, once the interactive process has been initiated by the

14

employee's request for an accommodation, the regulations contemplate that the employer will "us[e] a problem solving approach.'" 29 C.F.R. Pt. 1630, App. § 1630.9. *Tafolla v. Heilig*, 80 F.4th 111, 122 (2d Cir. 2023). There is genuine issue of fact as to whether Majid and Cimaglia really engaged in an interactive process and inquired as to whether there were positions available within Verizon to accommodate an employee of twenty-three years.

*No showing as to what are the essential functions of the job*

Defendant relies upon the deposition testimony of Majid to claim that lifting over 20 pounds and climbing are essential functions of the Field Technician position also known as the lineman or line associate job. However, nowhere in his testimony does he state that these are essential functions of the Field Technician position. More importantly, in the description of the Field Technician position no where does it state that lifting and climbing are essential functions of that job. (See, ECF Doc. No. 63-14) Basically, all of the functions of the position are listed under "General Duties". During his deposition, Majid stated in part with respect to flagging, that the person would "still [have] to be able to capable of doing all the functions of a line person if he's on that crew, in that street, working on that pole. (See, ECF Doc. No. 63-4, 66:19-21) However, when he was asked whether that was a "policy that is written somewhere" he responded "[t]hat's a policy that our superiors have. I don't know if it's written or not." (See, *Id.* at 66:22-24) When asked, whether there are work sites that can be secured without the requirements of handling over 20 pounds, he said "I'm not able to answer." (See, *Id.* at 69:23-25) During his testimony, Majid testified that a worker restricted in his functions was putting his crew in jeopardy. When questioned as to whether this was his determination, he stated that he guessed Verizon "made that determination because [they] don't take people with restricted duty back to work." (See, *Id.* at

15

72:13-22) This testimony raises a genuine issue of fact as to whether the Defendant's reasonable accommodation process is illusory.

It appears that when any request for accommodation in this title is made that management pretends to seek accommodation when in fact they know all along that it will be rejected. In fact, when Majid was asked whether the lineman job can be modified to accommodate a disability he responded that the safety staff would have to be spoken to for an answer to that question. (See, *Id.* at 73:16-25) Based on the evidence in the record, Defendant has not established that lifting over 20 pounds and climbing are essential functions of the positions that Plaintiff was qualified to perform. The Defendant has yet to provide any concrete evidence that in every job that Plaintiff was qualified for he would always have to be able to individually lift over 20 pounds and climb a ladder or a pole. In fact, it states in Section F. of the General Duties of the Field Technician, "[i]n some areas, pole climbing may not be a requirement…." (See, ECF Doc. No. 63-14 pg. 2) There is a genuine issue fact as to whether climbing is an essential function if there are "some areas" where it is not a requirement.

"To determine whether a function is essential, a court must consider a 'number of relevant factors,' including "the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, the mention of the function in a collective bargaining agreement, the work experience of past employees in the position, and the work experience of current employees in similar positions." *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 570 (S.D.N.Y. 2023) quoting, *McMillan v. City of New York*, 711 F.3d 120, 126 (2d. Cir. 2013). ("The Court must conduct a "penetrating factual analysis" of plaintiff's particular job duties to determine … essential job functions. *Id.* at 126. Similarly, to determine whether a requested accommodation is reasonable, the Court must engage in a 'fact-specific inquiry' and consider,

16

'among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it.' *Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995).) There is a triable issue of fact as to the Defendant's judgment, the written job description in this case, the amount of time spent lifting and climbing, mention of the lineman position in the CBA and the work experience of current employees in the position. "The term 'essential functions,' which is not defined in the statutes themselves, is generally defined in ADA regulations promulgated by the Equal Employment Opportunity Commission ('EEOC') to mean the 'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'" *Tafolla v. Heilig*, 80 F.4th 111, 119 (2d Cir. 2023) quoting, *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997) (quoting 29 C.F.R. § 1630.2(n)(1)).

## II.   **PLAINTIFF MEETS HIS BURDEN UNDER THE NYSHRL**

### A.   Plaintiff Was Disabled Under the Definition of the NYSHRL

"A claim of disability discrimination under the New York State Human Rights Law ... is governed by the same legal standards as govern federal ADA claims." *Lambert v. Trump Int'l Hotel & Tower*, 304 F. Supp. 3d 405, 420 (S.D.N.Y. 2018) quoting *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 184 n.3 (2d Cir. 2006). To establish a claim for failure to accommodate under the ADA or the NYSHRL, the employee must show that, he is a person with a disability under the meaning of the ADA or the NYSHRL; works for an employer covered by the statute that had notice of his disability with reasonable accommodation; that he could perform the essential functions of the job at issue; and that the employer has refused to make the requested accommodations. *Id.* at 420 As previously stated, as a matter fact and perception the Plaintiff was disabled and Defendant was arguably aware that an accommodation was sought before and after his return to work in November of 2019. Defendant failed to engage in a legally mandated

interactive process to accommodate the Plaintiff's request. There is no serious dispute that Plaintiff was qualified to perform the essential functions of his job. Whether that essentially involved the lifting of heavy equipment knowing that Plaintiff was about to undergo surgery and was attending physical therapy is a genuine issue of material that must be put before a jury.

    B.    Plaintiff Makes a Prima Facie Claim of Retaliation

The New York State Human Rights Law was recently expanded making the request of accommodation, a protected activity covered by the statute. "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because such person has … (iii) requested a reasonable accommodation under this article. Retaliation may include, but is not limited to, disclosing an employee's personnel files because such employee has (i) opposed any practices forbidden under this article, (ii) filed a complaint, testified, or assisted in any proceeding under this article, or (iii) requested a reasonable accommodation under this article, except where such disclosure is made in the course of commencing or responding to a complaint in any proceeding under this article or any other civil or criminal action or other judicial or administrative proceeding as permitted by applicable law." N.Y. Exec. Law § 296 Defendant's argument to the contrary must be precluded.

"With respect to causation, a plaintiff must prove 'that 'but for' the disability, the adverse action would not have been taken." *Tafolla* at 125-26 (2d Cir. 2023) quoting *Natofsky v. City of New York*, 921 F.3d 337, 347 (2d. Cir. 2019). Proof of causation can be established either "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence ... or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). "A plaintiff can indirectly establish a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the

18

adverse employment action." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (alteration adopted) (internal quotation marks omitted). The Defendant was forced to return to work without an accommodation in September 2019 and was injured shortly thereafter. Then he returned to work in November of 2019 and made the employer aware that he needed to avoid heavy lifting because he needed to undergo surgery and was attending physical therapy. A month later in December 2019 he is involved in an incident that the Defendant uses as pretext to justify his termination. There is a clear temporal proximity between his requests for accommodation and the termination.

        C.     <u>Plaintiff's Claims are not Preempted</u>

The Plaintiff's claims in this case do not require an application of the collective bargaining agreement. The cases cited by the Defendant are wholly inapplicable to the case at bar and are misapplied. In the *Whitehurst* case the plaintiff sued both the union and her employer and so the court deemed her suit untimely as a hybrid §301 Labor Management Relations Act action which was preempted by federal law. The court in that case stated that "[w]hen, on the other hand, a plaintiff covered by a CBA asserts 'legal rights independent of that agreement,' preemption does not occur. *Whitehurst v. 1199SEIU United Healthcare Workers E.*, 928 F.3d 201, 207 (2d Cir. 2019) quoting, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 (1987). A state-law claim is 'independent' when resolving it 'does not require construing the collective-bargaining agreement.' quoting *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988). This rule ensures that § 301 is not "read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994). The *Lever* case cited by the Defendants is also inapplicable in that it involved a pro se lawsuit by a former employee against the employer for breach of the collective bargaining agreement. In that case, the plaintiff did not name the union as a party but still put forth a breach

19

of contract claim invoking the application of the collective bargaining agreement. As in the other case cited by Defendant, the court treated the matter as an action pursuant to the LMRA under 29 U.S.C § 185 which was removed from state court and dismissed for untimeliness. The cases are totally different from the case at bar. The Plaintiff has only sued the Defendant employer in this action and the adjudication of his claims do not require any application of the collective bargaining agreement between Verizon and CWA Local 1104. The Plaintiff has already exhausted his administrative remedies under the CBA and has a right to pursue his independent discrimination claims against the Defendant. Therefore, Plaintiffs claims are not at all preempted or subject to dismissal.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Defendant's motion in its entirety and any such other and further relief as this Court deems just and proper.

Dated: New York, New York
July 2, 2026

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
*Attorneys for Plaintiff*

By: /s/ *Laine Alida Armstrong*
Laine Alida Armstrong
Edward Pichardo
225 Broadway, Suite 1902
New York, New York 10007
212-285-1500
laine@advocatesny.com
epichardo@advocatesny.com

20

## **LOCAL CIVIL RULE 7.1(c) WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I certify that Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment complies with word count limitations. Plaintiff's Memorandum of Law contains 6,649 words, not including the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Word) used to prepare the document.

By: /s/ *Laine Alida Armstrong*
Laine Alida Armstrong

21